## Dorsey and Macklin, and Donnelly & Co.'s Appeal.

1. The title of an act was "An Act relating to the liens of mechanics, material-men and laborers upon leasehold estates, &c.;" one section extended the liens to freeholds: *Held* to be unconstitutional, "freeholds" not being a subject clearly expressed in the title.

2. "Leaseholds" excludes estates of a higher grade.

3. The title of an act should be so certain as not to mislead.

4. Blood *v.* Mercilliott, 3 P. F. Smith 391, limited.

October 22d 1872. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Appeal from the Court of Common Pleas of *Venango county*: No. 114, to October and November Term 1871.

In the distribution of the proceeds of the sheriff's sale of the property of Good & Harris. The property sold was real estate held by them in fee; and personal property consisting of engine, engine-house, and other machinery, &c. The proceeds of the personal property amounted to $1405, and of the real estate $678.

The personal property was sold under several writs of fieri facias, and the real estate was sold under a levari facias on a judgment in a scire facias on a lien, for materials and labor, entered by virtue of an act passed April 8th 1868 (Pamph. L. 752; 2 Br. Purd. 1029, pl. 26 *et seq.*,) hereafter set out. There were other judgments entered against the defendants. The question in the case was whether the mechanics' liens attached by virtue of the Act of 1868, so as to take the fund, in preference to the judgments; and this depended on the constitutionality of the Act of 1868.

The title of that act was:—"An act relating to the liens of mechanics, material-men and laborers upon leasehold estates and property thereon in the county of Venango."

It enacted: Sect. 1st. That all persons furnishing materials for or about the erection, construction or repair of any engine, engine-

[Dorsey's Appeal.]

house, derrick, tank, machinery, or wood or iron improvement or for or about any building which may be constructed, erected or repaired upon any leasehold, lot or parcel of ground, or material furnished necessary for the improvement or development thereof, held by written lease for any term of years, and which shall or may be so constructed, erected or repaired by the tenants or lessees of said leased estate, or for them or for their use and benefit, shall have a lien upon all such engine or engines, material, machinery, buildings, tanks, wood or iron improvements as may be upon or pertaining to said leasehold, lot or parcel of ground at the time such claim may be filed as hereinafter provided, together with the lease, lot or parcel of ground on which the same is situated, for the price and value of the materials so furnished. *Provided,* That the lien hereby given shall extend only as to such lease or lot to the interest of the lessee or lessees, tenant or tenants therein.

Sect. 2. That all persons doing work for, on or about the erection, construction or repair of any engine, engine-house, &c., whether such labor is or may be done by the day, month or year or by contract, for the tenant or tenants, lessee or lessees of such lot or lease of parcel of land or for their use and benefit, shall have a lien upon the personal property and fixtures on said lot or lease of ground and upon such lot or leasehold itself, for the price and value of such work and labor. *Provided,* That such lien shall extend as to said lot or leasehold only to the interest of the tenant or tenants, lessee or lessees thereon."

"Sect. 6. The provisions of the Act of June 16th 1836, and supplement approved the 1st day of May 1861, relating to the liens of mechanics and material-men upon buildings, are hereby extended to all laborers, and to all work done, whether by the day, month, year or contract, for or about the drilling, boring and mining, and for or about the construction, erecting or repairing of any engine, buildings, tanks, derricks, machinery, wood or iron improvements which may be made or done for the mineral development or improvement of any land, and to all materials furnished for the improvement or development thereof and for or about the construction, erection or repair of any engine, building, tanks, derricks, machinery, wood or iron improvements thereon."

This act relates to Venango county only.

The Act of 1836 (Pamph. L. 696, 2 Br. Purd. 1025) gives a lien to mechanics and material-men on buildings and on the ground of the owner necessary for the useful purposes of the buildings. The Act of 1861 (Pamph. L. 550, 2 Br. Purd. 1028, pl. 20) extends such liens to debts for repairs, &c.

The distribution was referred to J. D. McJunkin, Esq., who decided that the mechanics' liens were not valid because "there was no *leasehold* connected with any of the property that the defendants owned;" that the 6th section of the Act of 1868 was

22 P. F. SMITH—13

·unconstitutional because the Act of 1868 related to two subjects, viz. : leaseholds and freeholds, and the subject is not clearly expressed in the title as required by the 2d amendment of 1864 to the Constitution of this Commonwealth.

He therefore distributed the proceeds of the personal property to the writs of fi. fa. in the order of their issue and the proceeds of the real estate to the judgments in the order of their entry, and excluded the mechanics' liens.

Upon exceptions, the Court of Common Pleas, Trunkey, P. J., reversed the distribution, and distributed the fund to the mechanics' liens, holding that the 6th section of the Act of 1868 was constitutional.

Dorsey and Macklin, and Donnelly & Co., judgment-creditors of the defendants, appealed to the Supreme Court, and assigned for error, that the court below erred in deciding that the 6th section of the Act of 1868 is constitutional, and distributing the funds to the mechanics' liens.

*E. L. Keenan* and *James D. Hancock*, for appellants, cited Grubbs *v.* State, 24 Ind. 265 ; Indiana Central Railroad *v.* Pott, 7 Id. 681; Prosher *v.* Orr, 12 Ga. 36; Fishkill *v.* Fishkill & Beekman Plank R., 32 Barbour 634.

*Sherman & Beebe* and *Barry & Johns*, for appellees, cited Sharpless *v.* Philadelphia, 9 Harris 147 ; Penna. Railroad *v.* Riblet, 16 P. F. Smith 164 ; Sun Ins. Co. *v.* New York, 4 Selden 241 ; People *v.* McCann, 2 Smith (N. Y.) 58 ; State *v.* County Judge, 2 Iowa 280 ; Blood *v.* Mercilliott, 3 P. F. Smith 391.

The opinion of the court was delivered, November 4th 1872, by
AGNEW, J.—The question in this case is between the mechanics' claim creditors and the judgment creditors. The court below decided in favor of the mechanics' liens, reversing the report of the auditor who had found the other way. The case arose under a special act, and the objection is that freehold estates are not within the title of the act, and therefore that the sixth section, under which these claims were filed, is unconstitutional. The title is "An act relating to the liens of mechanics, materialmen and laborers upon leasehold estates and property thereon, in the county of Venango." The estate sold by the sheriff was a fee-simple, and not a leasehold. Reasons might be given why leaseholds should be subjected to a lien for work and materials, when a freehold would not be. The former are often of short duration, and engines, derricks, machinery, and even buildings may be removed therefrom during the term. But it is sufficient that the legislature has, by the title of the act, clearly confined the lien to leaseholds. This description *ex vi termini* excludes

estates of a higher grade. The second amendment to the Constitution, adopted in 1864, provides that "no bill shall be passed by the legislature containing more than one subject, which shall be clearly expressed in the title, except appropriation bills." The word "subject" has a large signification, often embracing different kinds, different classes, and various modes, all belonging to the general subject. The word *estates* is itself an example, embracing fees, fee tails, estates for life, and estates for years, commonly called leaseholds. Had the qualifying term "leaseholds" been omitted in this title, all the various kinds of estates of freehold would have been comprehended within the title, and the sale of a freehold interest under the lien would have been good. Mere generality of meaning in the title ought not to avoid a law. For instance, the title, "An act relating to executions," is quite general as an expression of the subject of the act; yet no one could doubt the power of the legislature, under this title, to provide for the various kinds of executions generally comprised within the term execution; as for example writs of fieri facias, liberari facias, levari facias, venditioni exponas, &c. So an act relating to actions might include covenant, case, debt, &c. But a restriction in a title, which tends to mislead, stands on a different footing. The purpose of the amendment is to prevent a number of different and unconnected subjects from being gathered into one act, and thus to prevent unwise or injurious legislation by a combination of interests. Another purpose was to give information to the members or others interested, by the title of the bill, of the contemplated legislation; and thereby to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the bill. The amendment was found necessary to correct the evils of unwise, improvident and corrupt legislation, and therefore is to receive an interpretation to effectuate its true purpose. It would not do to require the title to be a complete index to the contents of the bill, for this would make legislation too difficult, and bring it into constant danger of being declared void. But on the other hand the title should be so certain as not to mislead. The language of the amendment is "one subject which shall be *clearly expressed* in the title." To be "clearly expressed" certainly does not mean something which is dubious, and therefore is not clearly expressed. If then the title seems to mean one thing while the enactment as clearly refers to another, it cannot be said to be clearly expressed. Now in the present case the words *leasehold estates* certainly do not express estates of freeholds. Perhaps a very cautious man might look into the body of a bill with this title to see whether other articles were embraced in it, but certainly only a few persons would think it necessary. We think the title does not even point to freehold estates, and therefore that the sixth section of this act is not constitutional.

[Dorsey's Appeal.]

The case of Blood *v.* Mercelliott, 3 P. F. Smith 391, is not opposed to this reasoning. It was a very close case, standing on the border of the Constitution; but the re-location of the county seat was not thought to be so entirely foreign to the subject of the bill, as to demand a decision against the constitutionality of the law. It is not probable that a case exactly similar to it will again arise, and therefore it should not be used to carry other cases beyond the clear language of the constitutional provision. Certainly nothing was said in that case which would justify us in declaring that there is no difference between a leasehold and a freehold and that the former comprehends estates in fee simple.

The decree of the court below is reversed, and it is now ordered and decreed that the report of the auditor be adopted and distribution made in accordance therewith, and the costs of this appeal be paid by the appellees.